CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

FEB 25 2015

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| GREAT EASTERN RESORT MANAGEMENT, INC., et al., | ) ) ) |
| Plaintiffs, | ) Civil Action No. 5:11cv00123 ) |
| v. | ) ) |
| | ) By: Michael F. Urbanski |
| SKY CABLE, et al., | )     United States District Judge ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

This interpleader action is one of several cases arising out of the unauthorized distribution of DIRECTV satellite television programming to thousands of viewers at Massanutten Resort. Currently pending on the docket in this matter are: (1) a motion to vacate the court's July 25, 2014 Consent Order (Dkt. # 95), which required plaintiffs and defendants Randy Coley, Resort Cable, LLC, and East Coast Cablevision, LLC d/b/a Resort Cable (collectively, the "Coley defendants") to submit to binding arbitration, and (2) a motion for summary judgment (Dkt. # 101), concerning the Coley defendants' claim to the interpleaded funds. For the reasons set forth below, both motions will be **GRANTED**. Additionally, the court will award sanctions against the Coley defendants, jointly and severally, in the amount of $8,347.50, pursuant to the December 10, 2014 Oral Order of Contempt.

I.

In November 2011, plaintiffs Great Eastern Resort Management, Inc., Woodstone Time-Share Owners Association, Shenandoah Villas Owners Association, The Summit at Massanutten Owners Association, Regal Vistas at Massanutten Owners Association, and Eagle Trace Owners Association (collectively, "GERM") filed a complaint pursuant to 28 U.S.C. § 1335, after discovering

the Coley defendants had failed to remit to DIRECTV payments made by GERM for the provision of DIRECTV satellite television and related services. This discovery was made in the course of litigation in a related case previously pending in this court, Sky Cable v. Coley, Civil Action No. 5:11cv00048 (hereinafter, "Sky Cable"). In Sky Cable, it was alleged, inter alia, that the Coley defendants violated the Communications Act, 47 U.S.C. § 605(a), by knowingly collecting programming revenue from more than 2000 subscriber units at the Massanutten Resort while reporting to DIRECTV the provision of service to only 168 units. The court granted judgment in favor of DIRECTV and against the Coley defendants in that case in the amount of $2,393,000, plus interest, on January 23, 2014. See Sky Cable, LLC v. Coley, No. 5:11cv00048, 2014 WL 279592 (W.D. Va. Jan. 23, 2014); see also Sky Cable, LLC v. Coley, No. 5:11cv00048, 2013 WL 3517337 (W.D. Va. July 11, 2013). Additionally, the court awarded DIRECTV $236,013.85 in attorney's fees and costs. Sky Cable, LLC v. Coley, No. 5:11cv00048, 2014 WL 4407130 (W.D. Va. Sept. 8. 2014).

### A.

GERM's interpleader complaint[1] seeks a determination of rights to certain monies owed by GERM for DIRECTV programming provided for a period of time beginning in July 2011, after Sky Cable was filed and the Coley defendants' fraudulent scheme was exposed. GERM's complaint names Sky Cable, LLC and Robert Saylor (collectively, "Sky Cable"), DIRECTV, LLC, and the Coley defendants, as defendants having competing claims to the funds. On November 10, 2011, the court entered an Order granting GERM's request to interplead $189,968 into the court's registry. On October 22, 2012, an additional $287,800 was paid into the court's registry. By Order entered December 13, 2012, this case was consolidated for all purposes with a related interpleader action, Mountainside Villas Owners Association, Inc. v. Sky Cable, LLC, 5:12cv00023 (the "MVOA

---

[1] The interpleader complaint has been amended multiple times and presently exists in the form of a Third Amended Complaint (Dkt. # 58).

2

Interpleader Action").[2] By Order entered September 9, 2014, the $22,400 that had been paid into the court's registry in the MVOA Interpleader Action was consolidated with the interpleader funds deposited into the court's registry in the instant action, and the MVOA Interpleader Action was dismissed. Thus, a total of $500,168 remains in the court's registry, awaiting a determination by the court as to the rightful ownership of these funds.

Sky Cable's claims to the interpleader funds were dismissed with prejudice on June 2, 2014, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), leaving the competing claims of DIRECTV, LLC and the Coley defendants still to be resolved. Additionally, in its third amended complaint, GERM claims it should be reimbursed from the interpleader funds $197,039.46 that it overpaid for repair services from October 15, 2011 to July 15, 2012.

### B.

In addition to these competing claims to the interpleader funds, the court must also resolve the issue of the Coley defendants' refusal to perform under a settlement agreement the parties entered into in connection with East Coast Cablevision, LLC's Chapter 11 bankruptcy proceeding. See Third Am. Compl., Dkt. # 58, at ¶¶ 27-81. Under this settlement agreement, the terms of which were approved by the bankruptcy court, the Coley defendants agreed to convey to GERM interest in certain cable television infrastructure at Massanutten Resort and to submit to binding arbitration to determine the value of the infrastructure. In exchange, East Coast Cablevision, LLC was able to obtain a dismissal of its bankruptcy and resume use of the company's assets. Despite repeated demands from GERM, the Coley defendants refused to perform under this agreement, claiming the settlement agreement was ineffective. See Coley Defs.' Answer to Third Am. Compl., Dkt. # 60, at ¶ 38.

---

[2] By Order entered February 22, 2013, disinterested stakeholder Mountainside Villas Owners Association, Inc. was dismissed with prejudice from the case.

3

With respect to this issue, GERM moved for partial judgment on the pleadings and to compel arbitration on June 20, 2014. As the Coley defendants elected not to file a written response, the motion was unopposed. The court set a hearing for July 25, 2014, at which Randy Coley, on behalf of himself and the Coley defendants, was directed to appear. Randy Coley did indeed appear at the July 25th hearing and, on the record in open court, agreed to the terms of a Consent Judgment Order (Dkt. # 82), declaring the settlement agreement valid and enforceable and requiring the Coley defendants to execute and deliver the necessary instruments to record their conveyance of the cable infrastructure to GERM within 60 days. Randy Coley also agreed to the terms of a Consent Order (Dkt. # 84), compelling GERM and the Coley defendants to submit to binding arbitration to determine the value of the cable infrastructure.[3] Both of these orders were endorsed by all counsel and by Randy Coley, on behalf of himself and the Coley defendants, and were entered on July 25, 2014.

Notwithstanding his consent to and endorsement of the July 25th orders, Randy Coley failed to comply with his obligations under these orders. Specifically, he failed to provide GERM with a fully executed copy of the infrastructure conveyance documents, which had been provided to him by GERM multiple times and which had been approved by his counsel. This forced GERM to file a motion on November 7, 2014 seeking entry of an order under Federal Rule of Civil Procedure 70(b) vesting title to the cable infrastructure in GERM. GERM also moved for sanctions against the Coley defendants. Following a hearing on December 10, 2014,[4] the court entered an Oral Order of Contempt against Randy Coley, directing GERM to submit a statement of attorney's fees and costs[5] incurred beginning with its filing of the November 7th motion for sanctions. The court also entered

---

[3] This Consent Order also stayed all matters and proceedings in this case until further Order of this case. As set forth infra, that stay will be lifted.
[4] Randy Coley appeared through counsel but was not present himself at this hearing.
[5] A Bill of Costs in the amount of $8,571.95 was filed on February 3, 2015 and is addressed herein.

an Order pursuant to Rule 70 divesting the Coley defendants of title to the cable infrastructure and vesting title in GERM.

With respect to the arbitration issue, GERM filed a motion to vacate the July 25th Consent Order compelling arbitration in light of the Coley defendants' refusal to participate in arbitration proceedings. That motion (Dkt. # 95) remains pending on the court's docket. Also pending is DIRECTV's motion for summary judgment concerning the Coley defendants' claim to the interpleader funds (Dkt. # 101).

## C.

Following the filing of GERM's motion to vacate and DIRECTV's motion for summary judgment, Randy Coley gave counsel for the Coley defendants a written directive to cease representation, and counsel thereafter moved to withdraw. The court granted counsel's motion to withdraw by Order entered January 9, 2015. The court directed Randy Coley to secure new counsel and have counsel note an appearance in this case on or before January 16, 2015. The court informed Coley that while he may be able to represent his personal interests in this case pro se, he cannot appear on behalf of any artificial entity, such as East Coast Cablevision, LLC d/b/a Resort Cable or Resort Cable, LLC. See Gilley v. Shoffner, 345 F. Supp. 2d 563, 566 (M.D.N.C. 2004) ("[A] limited liability company can appear in court only through a licensed attorney because it is a business entity." (citations omitted)). To date, no counsel has noted an appearance on behalf of any of the Coley defendants.[6]

With this background in mind, the court turns to the pending motions.

---

[6] On January 20, 2015, four days after the deadline for securing new counsel imposed by the court, Randy Coley faxed the court a letter providing his mailing address and stating:

> I have not retained a new attorney as to date, as I didn't think nor had the Reason to think that I needed one, However as of today 1-16-15, I will be Interviewing council [sic] in the Raleigh Durham Area. I will have the new council [sic] Inform the clerk's office of me retaining their services.

Dkt. # 112. Still, no counsel has noted an appearance on behalf of the Coley defendants.

5

## II.

GERM asks the court to vacate its July 25th Consent Order requiring GERM and the Coley defendants to submit to binding arbitration in accordance with the terms and procedures prescribed in the parties' Settlement Agreement and Mediation/Arbitration Agreement (collectively, the "Settlement Agreement"). GERM asserts that the Coley defendants have refused to cooperate with its attempts to carry out arbitration—first, by neglecting to execute the required Engagement Agreement, and then by refusing to pay their share of the retainer.[7] By Oral Order entered December 10, 2014, the court directed the Coley defendants to respond to this pending motion on or before December 22, 2014. No response was filed. Pursuant to paragraph 8 of the court's Scheduling Order (Dkt. # 62), the motion is therefore deemed unopposed.

In any event, GERM's motion has merit. GERM argues the Coley defendants stand to gain very little, if anything,[8] from arbitration and are thus likely to continue to resist efforts to commence arbitration proceedings. GERM asserts that it, too, has little to gain from arbitration in light of the fact that the Coley defendants have been divested of title to the cable infrastructure and title has been vested in GERM. GERM represents that it has gone to great lengths and incurred substantial expense in attempting to secure the Coley defendants' compliance with the Consent Order, and it would be unjust to force GERM to continue doing so. The court agrees.

GERM has undertaken extraordinary efforts to carry out the terms of the agreements and orders to which Randy Coley himself consented, only to be met repeatedly with obstruction on the part of the Coley defendants. The court has held Randy Coley in contempt once already for his failure to comply with the July 25th Consent Judgment Order, and it has no reason to believe

---

[7] GERM represents that it had initially offered to pay the Coley defendants' share of the arbitration retainer in an effort to move the arbitration forward but withdrew that offer after the Coley defendants continued to withhold signatures to the instruments necessary to convey title to the cable infrastructure.

[8] Even if the arbitrator were to award the Coley defendants some amount for the cable infrastructure, that amount would likely wind up in the pocket of DIRECTV, to whom the Coley defendants are liable in the amount of $2,393,000, plus interest.

further efforts to secure Coley's compliance with the terms of the July 25th Consent Order would be fruitful. Accordingly, the court will **GRANT** GERM's motion (Dkt. # 95), **VACATE** without prejudice its Consent Order (Dkt. # 84) compelling arbitration, and **LIFT** the stay of all proceedings set forth in the Consent Order.

### III.

DIRECTV moves for summary judgment,[9] seeking a declaration and judgment that the Coley defendants have no rights to the interpleader funds at issue in this case. These interpleader funds consist of payments owed by GERM, as well as the Mountainside Villas Owners Association, for DIRECTV programming provided beginning in July 2011, after Sky Cable was filed and the Coley defendants' fraudulent scheme was exposed, through July 2012. DIRECTV argues that the Coley defendants cannot possibly claim a valid right to the interpleader funds given the court's findings in the Sky Cable case.

By Order entered January 7, 2015, the court gave the Coley defendants an extension of time by which to file a response to DIRECTV's motion, in light of the fact that counsel had moved to withdraw at the Coley defendants' request. The court has received no response from the Coley defendants to date and, pursuant to paragraph 8 of the court's Scheduling Order, deems the motion unopposed. It is also well-taken.

In Sky Cable, the court held:

> The evidence makes clear that from at least 2004 through June 2011, the Coley defendants received DIRECTV programming signals authorized for 168 units at Mountainside Villas and distributed those signals to more than 2,500 properties the Coley defendants serviced at Massanutten Resort without proper authority from, or payment to, DIRECTV.

---

[9] Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013).

7

2013 WL 3517337, at *20 (W.D. Va. July 11, 2013).[10] The court determined Randy Coley was personally liable for the violation of 47 U.S.C. § 605 as well as vicariously liable as the sole member/manager of East Coast Cablevision, LLC. Id. The court further held that "[t]he deception perpetrated by the Coley defendants is undisputed, and they have presented no evidence to suggest that they were not aware and had no reason to believe that their acts violated § 605." Sky Cable, LLC v. Coley, No. 5:11CV00048, 2014 WL 279592, at *1 (W.D. Va. Jan. 23, 2014). As such, the Coley defendants did not fall within the safe harbor provision of § 605(e)(3)(C)(iii). The court entered judgment against Randy Coley and East Coast Cablevision, LLC, jointly and severally, in the amount of $2,393,000, plus interest. Id. at *3-4. Additionally, the court issued the following permanent injunction:

> Defendants Randy Coley and East Coast Cablevision, LLC, along with their agents, employees, representatives, successors and assigns, and any persons or entities controlled directly or indirectly by Randy Coley and East Coast Cablevision, LLC, are PERMANENTLY ENJOINED and RESTRAINED from engaging in any of the following acts or practices at Massanutten Resort and any of its related entities: a. Reselling, retransmitting, or re-broadcasting DIRECTV's encrypted satellite transmissions of television programming through television systems owned or controlled by Randy Coley and East Coast Cablevision, LLC, or by other means not authorized by DIRECTV; and [b.] Installing or operating DIRECTV satellite receiving equipment, including satellite dishes, integrated receivers/decoders, access cards and other equipment intended for DIRECTV's satellite television services, for use in connection to cable television systems owned or controlled by defendants Randy Coley and East Coast Cablevision, LLC, or other facility not authorized by DIRECTV.

Sky Cable, LLC v. Coley, No. 5:11CV00048, 2013 WL 3517337, at *32 (W.D. Va. July 11, 2013).

The Coley defendants offer no opposition to DIRECTV's summary judgment motion and have provided the court with no evidence to suggest they have any valid claim to the interpleader

---

[10] In fact, Randy Coley *admitted* that he reported to DIRECTV that 168 subscriber units would have access to DIRECTV programming, that he never paid DIRECTV for more than the 168 subscriber units originally reported, and that as of May 2011 he was providing DIRECTV programming to 2,353 subscriber units at Massanutten. Id.

8

funds in the court's registry. Given the Coley defendants' long standing scheme to defraud DIRECTV out of programming revenue they collected from more than 2000 subscriber units at Massanutten Resort, the court finds as a matter of law that the Coley defendants can state no valid claim to the interpleader funds.

Even if the Coley defendants could establish some claim to the interpleader funds, however, dismissal of such claim would still be appropriate in light of the Coley defendants' persistent failure to comply with the orders of this court. The court has "an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates. This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." United States v. Shaffer Equip. Co., 11 F.3d 450, 461 (4th Cir. 1993) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-45 (1991)). Under this inherent power, courts may issue orders, punish for contempt, assess attorney's fees, and dismiss actions. Id. at 462. "Since orders dismissing actions are the most severe, such orders must be entered with the greatest caution." Id. Factors to be considered prior to dismissing an action include: "(1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest." Id. at 462-63.

In this case, the Coley defendants have exhibited a pattern of recalcitrance and purposeful delay. In the course of East Coast Cablevision's Chapter 11 bankruptcy proceeding, GERM and the Coley defendants, who were represented by counsel, reached a Settlement Agreement, the terms of which were recited on the record to the North Carolina Bankruptcy Court on January 3, 2012 and approved by the Virginia Bankruptcy Court on May 23, 2012. Notwithstanding their assent to these

9

terms, the Coley defendants failed to abide by them despite repeated demands by GERM. See Coley Defs.' Answer to Third Am. Compl., Dkt. # 60, at ¶ 38. As a result, two years later, GERM was forced to file a motion for partial judgment on the pleadings and to compel arbitration. The Coley defendants did not oppose the motion. Indeed, Randy Coley, on behalf of himself and the Coley defendants, agreed to the terms of a Consent Judgment Order and Consent Order, which gave effect to the terms of the parties' Settlement Agreement. Those orders were entered on July 25, 2014. Yet even a court order could not secure compliance from the Coley defendants. Several months later, after Randy Coley continued to eschew efforts to arbitrate and inexplicably refused to provide GERM with a fully executed copy of the instruments necessary to convey title to the cable infrastructure, GERM again was forced to turn to the court for assistance. On December 10, 2014, the court held Randy Coley in contempt. Even that did not prove successful in gaining the Coley defendants' compliance with this court's directives, however. After their counsel moved to withdraw at the Coley defendants' direction, the court ordered that Randy Coley secure new counsel for the corporate defendants and have counsel note an appearance on or before January 16, 2015. He has not done so, leaving Resort Cable, LLC and East Coast Cablevision, LLC in default. Thus, as regards the first factor to be considered, there is a high degree of culpability on the part of the Coley defendants. None of this culpability is attributable in any respect to the Coley defendants' former counsel.

    With respect to factors three and four, the Coley defendants' actions have worked prejudice both to the judicial process and to the other parties in this case. This case has now been pending on the court's docket for over three years. GERM has gone to great lengths to secure the Coley defendants' compliance with obligations they agreed to undertake and has been forced more than once to seek the court's assistance in doing so. Both GERM and DIRECTV have expended considerable resources preparing motions and attending hearings as a result of the Coley defendants'

recalcitrance. As regards the availability of lesser sanctions, the court previously held Randy Coley in contempt for his failure to comply with the court's orders, directing GERM to file a statement of costs and fees incurred in preparing and arguing its motion for sanctions. Yet Randy Coley remains undeterred and continues to ignore the court's directives, leading the court to believe he will continue to do so if he remains a defendant in this case. Finally, the public interest in ensuring the integrity of the judicial process also weighs in favor of dismissing the Coley defendants' claim to the interpleader funds.

As such, the court will **GRANT** DIRECTV's motion for summary judgment (Dkt. # 101) and **DISMISS** with prejudice the Coley defendants' claim in this case.

### IV.

By Oral Order entered December 10, 2014, the court held Randy Coley in contempt and directed GERM to submit a statement of fees and costs incurred beginning with the filing of its November 7, 2014 motion for sanctions. GERM did so on February 3, 2015, seeking $8,347.50 in fees and $224.45 in costs incurred in preparing the motion for sanctions and supporting briefs and traveling to the December 10, 2014 hearing for argument.

"The fee-applicant has the burden of demonstrating the reasonableness of the fee requested. Reasonableness is the touchstone of any award of attorneys' fees and expenses. That is true whether the award is made as the consequence of a fee-shifting statute or as a sanction." E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., No. 3:09CV058, 2013 WL 458532, at *2 (E.D. Va. Feb. 6, 2013) (internal citations omitted). The Coley defendants have not objected to the reasonableness of the fees and costs submitted by GERM. The court has carefully reviewed the affidavit of Warren David Harless and finds the 31.50 hours expended at the rate of $265 per hour to be reasonable, as well as the $224.45 in costs incurred.

As such, sanctions in the amount of $8,571.95 will be awarded against the Coley defendants, jointly and severally, pursuant to the court's December 10, 2014 Oral Order of Contempt. Having no other business to come before the court in this matter, the Coley defendants will be **DISMISSED** from this action.

## V.

Having now dismissed the Coley defendants' claim to the interpleader funds and resolved the two pending motions in this case, the only remaining issue is GERM's claim for reimbursement of $197,039.46 from the interpleader funds, which GERM asserts it overpaid for repair services from October 15, 2011 to July 15, 2012. DIRECTV represents on brief that, based on prior discussions between counsel, it believes counsel can resolve any issues pertaining to this alleged overpayment with GERM. Accordingly, the court asks counsel for GERM and DIRECTV to confer and determine whether the parties can agree as to how these remaining claims to the interpleader funds should be resolved. Within fourteen days, the parties shall submit a proposed Order for the court's consideration as to the appropriate disbursement of the interpleader funds in the court's registry; or, if an agreement cannot be reached, the parties are directed to notify the court by filing a status report to that effect. Additionally, at this juncture, the court finds it appropriate to continue generally the trial of this matter, currently scheduled to begin March 2, 2015.

An appropriate Order will be entered.

Entered: 02-24-15

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge